**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WALTER LEE DEITER,

    Defendant - Appellant.

No. 14-2025
(D.C. No. 1:10-CR-00622-MV-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **MURPHY** and **McHUGH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered

submitted without oral argument.

---

    *This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Walter Lee Deiter appeals his conviction of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 922(a)(2). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

On November 12, 2009, in Albuquerque, New Mexico, police officers responded to a dispatch to investigate a reported disturbance. When they arrived at the scene, the officers observed Mr. Deiter and a woman arguing in the street. The couple saw the officers, disengaged from their argument, and began walking in different directions. Drug Enforcement Agent Patricia Whelan followed Mr. Deiter into the building, where he briefly disappeared behind an exterior staircase and then reappeared on a second level walkway. A three- to four-foot-tall wall blocked Agent Whelan's view of Mr. Deiter's lower body. Agent Whelan instructed Mr. Deiter to come downstairs, and then observed him squat down as if he was setting something on the ground before complying.

Mr. Deiter returned to the first floor, where Agent Whelan questioned him while Officer Sam Marquez started up the stairs to see if Mr. Deiter had placed anything behind the wall. At this point, Mr. Deiter fled from the police officers, who chased him on foot and eventually subdued him with a taser. Agent Whelan placed handcuffs on Mr. Deiter, while Officer Marquez held him down by the calves and ankles. The officers also searched Mr. Deiter for weapons, removing a set of brass knuckles and two knives.

Once the officers had Mr. Deiter under control, Officer Marquez proceeded to the second level, where he located a holster containing a small revolver. Agent Whelan looked at the holster and revolver after Officer Marquez discovered them, but cannot recall if she touched either item. A crime lab technician, who wore gloves at all times when handling the items, processed the holster and revolver at the scene. Officer Marquez later checked the revolver's serial number and requested a NCIC report on it. He wore gloves while doing so.

Forensic testing revealed that Mr. Deiter's DNA was on the holster and in smaller amounts on the revolver. The DNA evidence also revealed the presence on the revolver of an even smaller amount of DNA from an unidentified source. Because Mr. Deiter was a convicted felon and the revolver and ammunition had moved in interstate commerce, the government prosecuted him under 18 U.S.C. §§ 922(g)(1) and 922(a)(2).

Prior to trial, Mr. Deiter moved to compel production of DNA samples from Officer Marquez and Agent Whelan to support his claim that the holster and revolver were not his. The defense theory was that Mr. Deiter's DNA had been transferred onto the items by Officer Marquez or Agent Whelan, who came in contact with his DNA when they handcuffed him and then transferred it when they later touched the holster and revolver. The trial court held an evidentiary hearing on the motion, during which the government presented the DNA test results and the defense offered a DNA expert who explained the defense's "secondary transfer" theory. The trial court denied the motion to compel DNA samples from the officers.

At trial, the government introduced the DNA results and the defense offered expert testimony supporting its secondary transfer theory. The jury found Mr. Deiter guilty and the trial court sentenced him to 180 months imprisonment.

## II. DISCUSSION

On appeal, Mr. Deiter raises two issues. First, he claims the trial court abused its discretion in refusing to compel DNA samples from Agent Whelan and Officer Marquez. Second, he challenges the statute prohibiting a felon from possessing a firearm and ammunition that has once moved in interstate commerce as exceeding Congress's authority under the Commerce Clause of the United States Constitution. We affirm the trial court on both issues.

### A. *Motion to Compel*

Mr. Deiter argues the trial court abused its discretion by denying the motion to compel because the government was required to produce the officers' DNA samples under Rule 16. *See* Fed. R. Crim. P. 16(a)(1)(E). We disagree. Rule 16(a)(1)(E) requires the government to permit the defense to inspect and copy certain types of evidence "if the evidence is within the government's possession, custody, or control and: (i) the item is material to the defense." *Id.* The trial court did not abuse its discretion in denying the motion to compel because the DNA samples were not material to the defense.

There was little need for the samples because Mr. Deiter was able to advance his defense theory of secondary transfer without them. At trial, Mr. Deiter established through his own expert witness and through cross-examination of the prosecution's

-4-

experts that secondary transfer of DNA is possible. He was then able to use the presence of DNA from an unidentified source on the holster and revolver to argue that secondary transfer was responsible for the presence of Mr. Deiter's DNA on those items. Specifically, he argued that one of the officers picked up some of Mr. Deiter's DNA during the attempts to subdue and handcuff him and then transferred it with his or her own DNA—the unidentified sample—onto the holster and revolver. The lack of DNA samples from the officers did not prevent the defense from presenting a robust secondary transfer theory.

In fact, the production of DNA samples from the officers may not have supported this defense. Although DNA samples from the officers might have confirmed that one of them touched the holster and revolver after touching Mr. Deiter, it also might have eliminated them both as sources of the unidentified DNA. Even if the DNA samples established that one of the officers was the source of the unidentified sample, it would not definitively prove that Mr. Deiter's DNA came from that officer and not from his own handling of the holster and revolver.

Furthermore, the collection of DNA samples from the officers implicates important privacy interests. *Cf. Banks v. United States*, 490 F.3d 1178, 1186-88 (10th Cir. 2007) (balancing the government interest in obtaining DNA samples from persons convicted of nonviolent felonies against the intrusiveness into the individuals' privacy interests). Here, there was little justification to intrude on those interests. Accordingly, we

cannot conclude the district court exceeded its discretion in denying the motion to compel DNA samples from Agent Whelan and Officer Marquez.

## B. *Commerce Clause*

Mr. Deiter also claims his conviction cannot stand because Congress lacked authority under the commerce clause to prohibit his possession of a firearm and ammunition. The district court correctly rejected this argument in light of binding precedent from the United States Supreme Court and this circuit. *See Scarborough v. United States*, 431 U.S. 563, 571–72 (1977) (rejecting a commerce clause challenge to a felon-in-possession conviction); *United States v. Patton*, 451 F.3d 615, 636 (10th Cir. 2006) (concluding that this circuit is bound by *Scarborough* despite tension between it and the Supreme Court's later decision in *United States v. Lopez*, 514 U.S. 549 (1995)).

## III. CONCLUSION

The district court did not exceed its discretion in denying Mr. Deiter's motion to compel and it correctly rejected Mr. Deiter's Commerce Clause challenge to the statute criminalizing his possession of the firearm and ammunition. The decision of the district court is AFFIRMED.

ENTERED FOR THE COURT

Carolyn B. McHugh
Circuit Judge

-6-